# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-1210V
**Filed: April 8, 2020**
UNPUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

CHRISTINA CHRISTOPHER,

            Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

            Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

Findings of Fact; Onset and Site of Vaccination; Date of Vaccination; Influenza (Flu) Vaccine; Left Arm Injury

*Amy Senerth,* Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Debra Begley,* U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

**Oler**, Special Master:

On August 14, 2018, Petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered left arm and shoulder injuries as a result of an influenza ("flu") vaccine administered on September 28, 2015. Pet. at 1.

---

[1] I intend to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner was administered a flu vaccine on October 15, 2015, that Petitioner's pain was localized to her left elbow and left arm, and that she developed left elbow and left arm pain sometime between September 15, 2015 and September 21, 2015.

## I.      Relevant Procedural History

On August 14, 2018, Petitioner filed a petition alleging that she suffered from left arm and shoulder injuries as a result of a flu vaccine administered on September 28, 2015.  Pet. at 1. Petitioner filed medical records on August 14, 2018.  Exs. 1, 2, 3, 4, 7, 8.  On this date, she also filed her affidavit (Ex. 5) and a record of "historical immunization information."  Ex. 6.  Petitioner filed additional medical records on August 30, 2018 (Ex. 9) along with a statement of completion. ECF No. 7.

A SPU staff attorney conducted a status conference on October 2, 2018.  After this status conference, the Chief Special Master directed Petitioner to file additional medical records and a supplemental affidavit.  ECF No. 9.  Petitioner filed additional medical records on October 17, 2018 (Ex. 10) and on November 26, 2018 (Ex. 12).  She filed an affidavit on November 16, 2018, noting that the document filed as Ex. 1 at 2 is incorrect.  Ex. 11.  Specifically, Petitioner stated that she did not receive her flu vaccine on October 15, 2015, as indicated on Ex. 1 at 2.  Ex. 11.  After a status report from Respondent, Petitioner filed additional medical records on June 19, 2019.  Ex. 13.  She filed a statement of completion on this same date.  ECF No. 21.

On September 6, 2019, Respondent filed a Rule 4(c) Report ("Resp't's Rep.").  ECF No. 24.  Respondent stated that Petitioner had not established a Table injury because "Petitioner's elbow pain was diagnosed as a LABC nerve injury" which is not covered by the Table.  Resp't's Rep. at 5.  Respondent further stated that Petitioner had not provided evidence that satisfies her burden of proof under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005), and thus has not established a causation-in-fact injury.  *Id.* at 6-8.

This case was reassigned to my docket on September 17, 2019.  ECF No. 26.  I conducted a status conference on September 25, 2019 and ordered the parties to file a joint status report indicating whether they believed a ruling on facts was necessary, and if so, whether they both consented to a fact ruling on the record.  ECF No. 27.  The parties filed a joint status report on October 27, 2019 informing me that they believed a fact ruling was necessary, and that they agreed that I base my decision on the existing record.  ECF No. 28.  Both sides requested an opportunity to brief the factual issues in this case.  *Id.*  I granted that request and ordered a briefing schedule. Petitioner filed her brief on November 25, 2019.  ECF No. 29.  Respondent filed his response on December 23, 2019.  ECF No. 30.

On January 7, 2020, I directed Petitioner to file a supplemental affidavit answering several questions about the vaccination consent form, the DaVita Workday online terminal, and any evidence in her possession that would help establish a timeline.  ECF No. 31.  Petitioner filed her supplemental affidavit on January 14, 2020.  Ex. 14.

This matter is now ripe for a determination on facts.

2

## II.     Medical History Relevant to the Factual Issues in this Case

According to her vaccination record, Petitioner received her flu vaccine in her left deltoid on October 15, 2015.  Ex. 1 at 2.

On October 23, 2015, Petitioner visited PA Ryan Hertweck at Premier Medical Associates. Ex. 2 at 28-31.  The history of present illness (HPI) section of this record states that Petitioner presented with

> sudden onset of continuous episodes of moderately severe [pain] in the left arm only, described as burning and sharp, radiating to the hand.  Episodes started September 21, 2015.  Symptoms are getting worse (Right medial elbow/arm pain). Pt was stung multiple times in the right arm about 1 month ago.  She also got a flu shot in the left arm around the same time…. Pain is all from the elbow and distally…

Ex. 2 at 28.

On November 2, 2015, Petitioner visited Dr. David Neuschwander, M.D., an orthopedic surgeon.  The records from this visit indicate a "1 month history of left elbow pain."  Ex. 3 at 1. Petitioner denied any known injury.  *Id.*

Petitioner visited Dr. David Neuschwander again on November 12, 2015 for a follow up on her left upper extremity pain.  Ex. 3 at 3.  According to the history of present illness ("HPI"), Petitioner reported that "most of her symptoms are in the radial portion of her forearm…. She has not made any benefit and she is had [sic] symptoms since mid September."  *Id.*  She was assessed with probable radial sensory nerve hypersensitivity.  *Id.*

On November 16, 2015, Petitioner visited Allegheny Health Network.  The HPI notes a "2 month history of left radial sided forearm pain.  She got a flu shot in that arm 2 days before this started."  Ex. 4 at 9.  Petitioner was assessed with left radial tunnel syndrome.  *Id.* at 10.

On December 16, 2015, Petitioner underwent a left lateral antebrachial cutaneous nerve release and a left distal biceps tendon lengthening.  Ex. 4 at 47.  Petitioner followed up on December 31, 2015.  During this visit, Petitioner reported that the surgery "completely resolved her pain."  *Id.* at 205.  The exam demonstrated "full elbow flexion-extension pronation supination…"  *Id.*

## III.     Other Evidence

### A.  Affidavits

Petitioner filed three affidavits in this case.  In her first affidavit, Petitioner stated that she received her flu shot at DaVita Dialysis in White Oak, Pennsylvania on September 28, 2015.  Ex.

5 at 1.  She further stated that she felt pain and numbness from her left shoulder to her left wrist within 24 hours of vaccination.  *Id.*

In her second affidavit, Petitioner explained that Exhibit 6 was a screen shot from her employee login system at DaVita.  Ex. 11.  Petitioner personally entered the date into the online system.  *Id.*  Petitioner stated that she has been retired from DaVita since April of 2016, and no longer has access to the database.  *Id.*

Petitioner stated that the purported error in the date entered on her vaccination record was as a result of an error by the facility administrator, Mary Yuhas.  Ex. 11.  Petitioner stated she did not realize the mistake until she started her vaccine claim.  *Id.*  In response to the SPU staff attorney's request that Petitioner explain why she reported pain beginning on September 21, 2015, Petitioner stated that she reported symptoms starting about one month before the appointment, but that she was unsure of the date of the vaccine.  *Id.*

In her third affidavit, Petitioner answered the questions that I posed.  She stated that the only portion of the vaccination form that she filled out was her signature.  Ex. 14 at 1.  She stated that all other parts of the form were filled out by the nurse, Stacey Stinner-Poston.  *Id.*  Petitioner also stated that she entered what she claims is the date of vaccination into the DaVita online database on the same day she received the vaccine.  *Id.* at 2.

### B.  Documentary Evidence

Petitioner filed a document entitled "Historical Immunization Information."  Ex. 6.  This document is a screen shot of a database maintained by DaVita Dialysis, her previous employer.

## IV.    Issues

There are three factual issues for me to decide in this case: (1) whether Petitioner was administered a flu vaccine on October 15, 2015 or on September 28, 2015; (2) whether Petitioner's first symptom or manifestation of onset after vaccine administration was within 48 hours as set forth in the Vaccine Injury Table.  42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).  The Qualifications and aids to interpretation ("QAI") for a Table SIRVA also require that a Petitioner's pain occurs within 48 hours.  42 C.F.R. § 100.3(c)(10); and (3) whether Petitioner's pain was located in her shoulder, or instead was in some other part of her arm.

## V.    Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  *Moberly v. Sec'y of Health & Human Servs*., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence

4

of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Vaccine Act § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Additionally, when determining the impact of the evidence presented, the special master should consider factors such as the reliability and consistency of the evidence. *See Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 416 (Fed. Cir. 1993). "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent. If a record was prepared by a disinterested person who later acknowledged that the entry was incorrect in some respect, the later correction must be taken into account." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, at *4 (Fed. Cl. Spec. Mstr. Apr. 25, 1991), *mot. for rev. denied*, 23 Cl. Ct. 726 (1991), *aff'd per curium,* 968 F.2d 1226 (Fed. Cir. 1992).

## VI.    Findings of Fact

### A.  Date of Vaccination

I find that the record in this case establishes by a preponderance of the evidence that Petitioner was administered a flu vaccine on October 15, 2015. I make the aforementioned finding after a complete review of the record, including all medical records, Petitioner's affidavits, other documentary evidence, and Respondent's Rule 4(c) Report.

Petitioner was employed by DaVita Dialysis in White Park, PA. Pet. at 1. She submitted a form entitled "Inactivated Influenza Vaccine Consent/Declination." Ex. 1 at 2. This form indicates that Petitioner received her flu vaccine in her left deltoid on October 15, 2015. *Id.* Petitioner's signature appears directly across from the date. *Id.* In her second affidavit, Petitioner indicated that her facility administrator, Mary Yuhas, incorrectly completed her vaccine consent form.[3] Ex. 11. Petitioner stated that she did not notice the mistake until she filed her petition. *Id.* In response to my questions, Petitioner stated in her supplemental affidavit that Nurse Stacey Stinner-Poston wrote the date on the vaccination consent form. Ex. 14 at 1. Although I asked whether the form was already filled out when Petitioner signed it, she did not answer this question. *See* Ex. 14. On its face, the form does not contain any irregularities.

---

[3] Notably, in her third affidavit, Petitioner indicated that Nurse Stacey Stinner-Poston filled out the other parts of the form aside from her signature. *See* Ex. 14 at 1.

Petitioner also filed a document entitled "Historical Immunization Information." Ex. 6. She describes this document as a screen shot from her employee login system at DaVita. Ex. 11. Each year, Petitioner entered the date of her flu vaccination into the employee login system. *See id.* Petitioner entered "09/28/2015" as the date she received her flu vaccine in 2015. Ex. 6. According to Petitioner, she entered this information the same day that she received the flu shot. Ex. 14 at 2. She also stated that the screen shot entered as Exhibit 6 is the only available evidence from the DaVita database. *Id.*

Ultimately, I find that Petitioner's record of vaccination is a more reliable document than the DaVita screen shot. The vaccination record filed in this case contains the Petitioner's signature as well as the date, 10-15-15. Ex. 1 at 2. Although Petitioner states that Nurse Stinner-Poston entered this date incorrectly (and that it should have stated 9-28-2015), the record appears regular on its face. There also does not appear to be an explanation as to why Nurse Stinner-Poston entered a date on the form that was off by 17 days. Petitioner asserts that I should instead consider the "Historical Immunization Information" (Ex. 6), which is a screen shot of information that Petitioner personally entered into the DaVita database. However, there is no way to independently verify the contents of this screenshot. Because the database is maintained by Petitioner's prior employer, Petitioner states that she is unable to provide additional authenticating information. For example, if it were possible to independently verify that Petitioner had entered her date of vaccination the same day she states she received the shot, I could place more value on this document. As the record currently stands, I cannot give more weight to an unauthenticated screen shot than I afford to a medical record. Petitioner's vaccination record provides preponderant evidence that she received her flu shot on October 15, 2015.[4]

## B. Location of Pain

Based upon the record as a whole, and specifically the evidence cited below, I find by a preponderance of the evidence that the location of Petitioner's pain was in her left elbow and left arm, and not her shoulder.

On October 23, 2015, Petitioner presented to Premier Medical Associates with left arm pain that radiated to the hand. Ex. 2 at 28-31. The pain was described as "all from the elbow and distally." *Id.* at 28. On November 2, 2015, Petitioner visited an orthopedic surgeon with a "1 month history of left elbow pain." Ex. 3 at 1. She followed up with the same doctor on November 12, 2015 and reported that "most of her symptoms are in the radial portion of her forearm..." *Id.* at 3. On November 16, 2015, Petitioner reported a "2 month history of left radial sided forearm pain." Ex. 4 at 9.

On December 16, 2015, Petitioner underwent a left lateral antebrachial cutaneous nerve release and a left distal biceps tendon lengthening. Ex. 4 at 47. Petitioner followed up on December 31, 2015. During this visit, Petitioner reported that the surgery "completely resolved

---

[4] The notes from Petitioner's October 23, 2015 medical appointment state that "Pt was stung multiple times in the right arm about 1 month ago. She also got a flu shot in the left arm around the same time…." Ex. 2 at 28. While this document provides some support for Petitioner's contention that she received her flu shot on September 28, 2015, this evidence is not sufficient to overcome the presumption of validity afforded to Petitioner's vaccination record.

her pain." *Id.* at 205.   The exam demonstrated "full elbow flexion-extension pronation supination…" *Id.*

Each of these records described pain in Petitioner's left arm and elbow, and not in her shoulder.  My finding is consistent with each of the applicable medical records in this case.

### C.  Onset

I find that the record in this case establishes by a preponderance of the evidence that Petitioner experienced onset of left elbow and left arm pain between September 15, 2015 and September 21, 2015.  I make the aforementioned finding after a complete review of the record, including all medical records, Petitioner's affidavits, other documentary evidence, and Respondent's Rule 4(c) Report.

During her October 23, 2015 medical appointment, Petitioner specifically stated that her episodes of left arm pain started on September 21, 2015.  Ex. 2 at 28.  The notes from that visit go on to state that "Pt was stung multiple times in the right arm about 1 month ago.  She also got a flu shot in the left arm around the same time…." *Id.*  September 21, 2015 is three weeks before Petitioner's October 15, 2015 flu vaccination.  Of note, this date is also one week prior to the September 28, 2015 date that Petitioner alleges she received her flu vaccine.

During her medical visit on November 2, 2015, Petitioner described a "1 month history of left elbow pain."  Ex. 3 at 1.  She denied any known injury.  *Id.*  One month before November 2, 2015 is approximately October 2, 2015.

During a follow-up visit with the same doctor, Petitioner reported that she is had [sic] symptoms since mid-September."  Ex. 3 at 3.  Mid-September is approximately one month prior to her October 15, 2015 flu vaccination.

On November 16, 2015, Petitioner visited Allegheny Health Network.  The HPI notes a "2 month history of left radial sided forearm pain.  She got a flu shot in that arm 2 days before this started."  Ex. 4 at 9.

Although the medical records do not pinpoint the exact onset of Petitioner's left arm pain, they provide a general range.  I find records that indicate an approximate period of time for onset to be less persuasive than records that allege onset with more specificity.  For example, a one-month or a two-month history of pain (*see* Ex. 3 at 1; Ex. 4 at 9), provide an approximate date of onset.  On the other hand, the medical record that indicates Petitioner's left arm pain started in mid-September is more specific.  Ex. 3 at 3.  Further, the record which places onset of pain on September 21, 2015, is highly precise.  Ex. 2 at 28.  This record is persuasive, in part, because it is hard to understand why PA Hertweck would have noted that specific date unless Petitioner had provided it to him.  The October 23, 2015 record is also especially persuasive because it is the record closest in time to Petitioner's onset of pain.  Based on a preponderance of the evidence in this case, I find that Petitioner developed symptoms of left elbow and left arm pain sometime between September 15, 2015 (mid-September) and September 21, 2015.

7

**VII.     Conclusion**

In light of all of the above and in view of the record as a whole, I find that (1) Petitioner was administered a flu vaccine in her left arm on October 15, 2015; (2) Petitioner experienced pain in her left elbow and left arm; and (3) the onset of Petitioner's painful symptoms occurred between September 15, 2015 and September 21, 2015.

Petitioner shall file a status report by no later than Monday, June 08, 2020, indicating how she would like to proceed.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master